No. 35,467

ELLA POWNALL and MAY CONNELL, *Appellees*, v. EVAN J. CONNELL, *Appellant* (A. F. SCHOENIG and RICHARD NELSON, *Defendants*).

(122 P. 2d 730)

Opinion filed March 7, 1942.

*T. R. Evans,* of Chanute, argued the cause, and *George F. Beezley,* of Girard, was on the briefs for the appellant.

*R. L. Letton,* of Pittsburg, argued the cause, and *Robert O. Karr, T. J. Karr,* both of Girard, and *P. E. Nulton,* of Pittsburg, were on the briefs for the appellees.

The opinion of the court was delivered by

DAWSON, C. J.: This was an action in ejectment and for the rents of the property involved.

Plaintiffs' petition alleged their ownership and title to a quarter section of Crawford county land, that they were entitled to its possession, and that defendant unlawfully kept them out of possession. A second cause of action was also pleaded in which plaintiffs claimed damages in the sum of $3,200 for being deprived of the use of the property for ten years last past, estimating their loss and damage at $320 per annum.

In an answer and second amended cross petition defendant Evan J. Connell denied generally all the allegations of plaintiffs' petition, and then pleaded matters which might defeat plaintiffs' action and also entitle him to a decree adjudging him to be the owner of the property in dispute and barring plaintiffs of any interest therein.

The matters pleaded in the second amended cross petition must be summarized at some length, viz.:

Plaintiffs are the two sisters of defendant, and all three are the children of the late T. B. Connell and the late Sarah I. Connell, who in their lifetime owned and resided on the farm in question. Defendant was born on that farm in 1870 and has resided there all his life.

Defendant alleged that about the year 1895 his father and mother made an oral agreement with him—

"Whereby he was to become the owner of the above described real estate at the death of his parents in compensation for the care for their physical needs, looking after them and their property and looking after them in their old age, and medicine and medical services, which he had given to his said parents and would give said parents during the remainder of their lifetime that he performed each and every part of said agreement on his part to be done."

The father died in 1902, apparently intestate, and his estate was never probated.

In January, 1913, these three litigants, plaintiffs and defendant, executed a deed in favor of their mother, Sarah I. Connell, con-

veying to her all their interest in the Connell farm under the statute of descents. (G. S. 1935, 22-108, 22-118; *Dodge v. Beeler*, 12 Kan. 524.) Defendant alleged that the purpose of this conveyance was to enable their mother to carry out the oral agreement between defendant and his parents made some 18 years previously; and that after the death of T. B. Connell, the mother repeatedly affirmed the oral agreement of 1895 and "always intended that the same should be carried out according to its terms."

On September 28, 1914, the mother, Sarah I. Connell, made her will, and died on August 27, 1929. Her will was duly admitted to probate on September 14, 1929. Its pertinent terms read:

"First. I give and bequeath to my son, Evan J. Connell, the sum of one hundred dollars ($100.00).

"Second. All the rest, residue and remainder of my estate, both real and personal, and wherever located, I give, devise and bequeath to my daughters, Ella Pownall and May Connell, to have and to hold the same obsolutely, share and share alike.

"Third. I hereby appoint my daughter, Ella Pownall, executrix of this my will without bond."

Defendant's pleading further alleged that Sarah I. Connell bequeathed to him only the sum of one hundred dollars ($100) because she knew he was to receive the real estate in controversy under the oral agreements alleged, and that this fact was well known to the plaintiffs; and that ever since the will of Sarah I. Connell was admitted to probate plaintiffs have so construed this will, and during all that time until shortly before the filing of this action they have considered that defendant was the owner of the farm by virtue of said agreement.

Defendant further alleged that upon the death of Sarah I. Connell he took possession of the property involved, and has openly claimed its ownership ever since, which facts plaintiffs knew since 1929, and that they have permitted defendant, without objection, to continue to assert his ownership and they are now estopped to assert their ownership; that he has paid the taxes and the expenses of upkeep and has made lasting improvements on the property, to wit, an addition to the barn in 1915 at a cost of $1,500, another improvement to the barn in 1939 at a cost of $300, also a cellar, chicken houses and small sheds constructed by defendant at various times at an aggregate cost of $500.

Defendant concluded with the usual prayer—that plaintiffs take

nothing, and that he be adjudged the owner and his title quieted, and for equitable relief.

Plaintiffs filed a demurrer to the second amended cross petition as above summarized, on the ground that it did not state a cause of action in favor of defendant or against the plaintiffs.

This demurrer was sustained and defendant appeals, contending that the facts pleaded in his second amended cross petition stated a cause of action for the specific performance of an implied or constructive trust, that plaintiffs acquired title with notice of the trust, and that the statute of limitations has no application until such trust is repudiated.

It is not easy to discern any rational theory of the existence of any sort of trust in the facts pleaded by defendant. An oral promise by a father and mother that their son shall have their farm after their deaths in consideration of services performed and to be performed by him is merely a contract for a devise or conveyance of land. The parents do not place themselves into the artificial status of trustees of their farm by their making of such a contract. But if they may be regarded as trustees, their duties as trustees necessarily were to be consummated not later than the time of the death of the survivor of them. The father died in 1902 without giving any indication that he recognized the alleged contract of 1895 or the status of the farm as a "trust res" in favor of his son. The mother made her will in 1914. In it she not only failed to recognize the alleged contract of 1895, or any status of the farm as a trust in favor of defendant, but deliberately devised the farm in controversy to defendant's sisters, the plaintiffs herein. Moreover, on the death of the mother fifteen years after she made her will, her estate was probated and no claim was made in the probate court that plaintiff had an oral contract with his mother whereby he was to have the farm at her death. Nor did defendant present in that court any claim that the farm constituted an implied or constructive "trust res" for his benefit under the alleged 34-year-old oral contract with his parents. But to continue our examination of defendant's theory of a trust, if the farm property could be regarded as a "trust res" and defendant's mother as the trustee thereof, the fact that she died without taking some step to comply with the contract of 1895 and that her will which was duly probated wholly ignored that contract and made a disposition of the farm wholly at variance with the contract—these facts gave positive notice to defendant that the al-

leged "trust" had been repudiated. Consequently he was bound to assert his right to the property within the time allowed by the statute, which was three years, under the civil code. (G. S. 1935, 60-306, 2d clause; *Burrows v. Johntz,* 57 Kan. 778, 48 Pac. 27; *Nicholson v. Nicholson,* 94 Kan. 153, 157, 146 Pac. 340; *Wright v. Jenks,* 124 Kan. 604, 610, 261 Pac. 840. See, also, 65 C. J. 1028-1029.) Defendant's cross petition asserting his right to the property was filed sometime in 1941 — some twelve years after the probate of his mother's will, at which time, if not sooner, he was made aware of his mother's breach of trust. Clearly, then, his cross action was barred by the three years' provision of the statute of limitations.

In the above we have tolerantly considered defendant's theory of the case as a cross action to enforce an implied or constructive trust based on an oral contract, but we do not approve of that theory of the case. Equitable considerations frequently can be invoked for relief in cases of hardship, unjust enrichment and the like, on the theory of a constructive trust, but they cannot be invoked in the face of pertinent statutes. As said in *Beeson v. Lotz,* 101 Kan. 399, 166 Pac. 466: "Rules of equity cannot be intruded in matters plainly and fully covered by positive statutes."

In our view the controlling question in this case is shortly disposed of. The farm in question was devised to plaintiffs by Mrs. Connell's will, and that will was duly probated. If defendant had any objection to the will he should have challenged it in time and season. If he considered that he had an equitable claim to the farm in conflict with its disposition by the will, he had the privilege of contesting it within the time allowed by the statute—one year, under G. S. 1935, 22-223. In *Mayer v. Taylor,* 142 Kan. 54, 45 P. 2d 858, the action was to enforce an alleged contract that in 1892 plaintiff's uncle and aunt, residents of Topeka, had agreed with plaintiff's mother, resident of Belgium, that if she would send plaintiff, then a minor, to them in Topeka and if he would render to them the dutiful obedience of a son until he attained his majority, the uncle and aunt would leave him all their property at their deaths. Plaintiff alleged that the obligation of his mother and himself was fully performed. The uncle and aunt made a joint and mutual will whereby their property was devised to various beneficiaries excluding the plaintiff. That will was never probated as that of the uncle who died first. The aunt made some codicils to it, and after her death it was duly probated on April 22, 1933. On May 11, 1934, plaintiff began his

action to enforce the alleged oral contract of 1892—one year and 19 days after the probate of his aunt's will which ignored the contract. The trial court held that plaintiff's action was barred by the one year's provision allowed by the civil code to contest the will. This court affirmed the judgment. In the opinion we said:

"Counsel for plaintiff, however, make the contention that this action is not one to contest the will—that such a contest would only be concerned with its formalities, the capacity of the testators, and possible questions of undue influence, with none of which matters plaintiff is concerned. However, the statute which authorizes the contest of a will does not confine the grounds of such contest within such narrow limits. Any cause of action which a pleader can set down on paper which, if established, would necessarily render a will nugatory, is a contest of the will and must be brought within the time allowed by the statute above quoted. All this is *stare decisis* in this jurisdiction, since it was authoritatively and deliberately so declared in the thoroughly contested case of *Rishel v. McPherson County,* 122 Kan. 741, 253 Pac. 586; id. 123 Kan. 414, 255 Pac. 979; id. 124 Kan. 31, 257 Pac. 939." (p. 57.)

To the same effect were *Kunze v. Kunze,* 145 Kan. 72, 64 P. 2d 568; *Koch v. Wolf,* 146 Kan. 247, 69 P. 2d 1088; *Axe v. Wilson,* 150 Kan. 795, 96 P. 2d 880.

That our oft-repeated rule which controls this case is not limited to Kansas jurisprudence, see *Stowe v. Stowe,* 140 Mo. 594, 41 S. W. 951, where it was held:

"Wills are the creatures of statutes, and the jurisdiction of the probate court for admitting them to probate is exclusive save as to review, and courts of equity have no jurisdiction to set them aside.

"Where a will has been obtained by fraud, and the time has passed in which its probate can be tested, the courts will not nullify its effects by declaring the devisees hold the property as trustees for the heirs of the testator. The rights of the heirs depend on the final establishment of the will, and if it is not set aside in the statutory way it determines the title to the estate." (Syl. ¶¶ 2, 5.)

The judgment is affirmed.

HOCH, J., not participating.